No. 13,190.

STATE EX REL. SAMUEL L. GILMORE VS. HON. A. BRITTIN, CHAIRMAN, ETC.

SYLLABUS.

1. At the time of the adoption of the Constitution of 1898 the salary of the City Attorney of New Orleans was, under the Constitution and laws then in force, $3500 per annum. The present Constitution, in superseding that of 1879, declared that all officials then in office should hold their respective offices until their terms expired and should receive the compensation as fixed by the Constitution and laws in force at the date of the supersession, except as otherwise provided in the new organic law.

2. This can be given no other meaning than that the officials holding under the old Constitution should continue in office under the new during their respective terms and receive the salaries thereto attaching, and none other, to the end of their terms. This, of course, not applying to those officials coming within the exception "as herein otherwise provided" (Art. 325, 5th Clause) whose salaries are established by the Constitution itself.

3. One claiming an official salary greater than that which he has been receiving must point to the provision of law which, with certainty and beyond doubt, authorizes it. Otherwise the courts cannot sustain his demand.

APPEAL from the Civil District Court for the Parish of Orleans. —*Ellis, J.*

*Carleton Hunt* for Relator, Appellee.

*W. S. Parkerson* for Respondent and Appellant.

*Geo. W. Flynn* for Intervenors, Appellants.

State ex rel. Gilmore vs. Brittin, Chairman, Etc.

The opinion of the court was delivered by

BLANCHARD, J. The question presented is whether the annual salary of the City Attorney of New Orleans is $3500 per annum, or $6000 per annum.

Relator is the City Attorney. He was appointed to the office in September, 1896. His allegation is that he was appointed for the term of six years at $6000 per annum in accordance with Section 36 of Act No. 45 of the Acts of 1896.

He avers that it is the ministerial duty of the defendant as Chairman of the Finance Committee of the City Council, to certify to the correctness of the semi-monthly pay-rolls of the City Attorney's office for payment, that defendant refuses to perform that duty, and has notified relator, in writing, of his intention hereafter to decline to certify as being correct and due to him (relator) the semi-monthly salary of $250.

Representing that the law has not assigned adequate relief by the ordinary means, he invokes the writ of mandamus to redress the wrong of which he complains and to compel respondent to approve the pay-roll for his salary at the rate of $500 per month, or $6000 per year.

The rule *nisi* having issued, respondent, as showing cause why the writ should not be made peremptory, answered that relator is not entitled to the compensation claimed by him as City Attorney, that his salary as such under the Constitution and laws is $3500 only a year, and that instead of $250 semi-monthly salary demanded, he is entitled to only $145.83 semi-monthly, which amount respondent is willing to certify for payment.

He avers that relator was appointed City Attorney under the provisions of Section 27 of Act No. 20 of the Acts of 1882, which fixes his salary at $3500 per annum, and that the Constitution of 1879, in force at the time of his appointment, prohibited by its Article 254 any salary in excess of that sum.

He represents that in so far as Section 36 of Act 45 of 1896 authorizes the payment of $6000 per year to the City Attorney, the same is unconstitutional and void as being in conflict with Article 254 of the Constitution of 1879 then in force.

Referring to Section 123 of Act 45 of 1896, which declares that:—
"Should the Constitutional restriction limiting the salary of municipal officers of New Orleans to thirty-five hundred dollars be not

96 SUPREME COURT OF LOUISIANA.

State ex rel. Gilmore vs. Brittin, Chairman, Etc.

removed before this Act takes effect, then, and until such restriction be removed, the several officers under this charter whose salaries exceed such constitutional limit shall receive each the salary of thirty-five hundred dollars per annum; otherwise, and as soon as the same shall be removed, they shall receive the salaries herein mentioned," respondent contends that the constitutional limitation referred to has never been removed, but has been rendered more binding and effective by the provisions of the Constitution of 1898, and cites, in this connection, Sec. 5 of Art. 325 of that Constitution, which is as follows:

"All officers, executive, legislative, and judicial, State, parish or municipal, who may be in office at the adoption of this Constitution, or who might be elected or appointed before the election or appointment of their successors, as herein provided, shall hold their respective offices until their terms shall have expired, and until their successors are duly qualified, as provided in this Constitution, unless sooner removed, as may be provided by law; and shall receive the compensation now fixed by the Constitution and laws in force at the adoption of this Constitution, except as herein otherwise provided."

He prayed that the writ of mandamus be denied.

Certain tax-payers of the City of New Orleans intervened, joining respondent in resisting the demand of relator.

There was judgment in the court below sustaining relator's view of the law and making peremptory the writ of mandamus.

Respondent and the intervenors appeal.

At the time relator became City Attorney the salary of that office could not, under the Constitution of 1879, exceed $3500 per annum. Art. 254.

Section 27 of the former charter of the City (Act No. 20 of the Acts of 1882) fixed it at that sum.

By Act No. 45 of the Acts of 1896 a new charter was provided for the City, which superseded that of 1882.

The 36th section of this new charter undertook to name $6000 per annum as the salary the City Attorney provided for under that Act should receive.

But this was in the teeth of the Constitution then existing, and void.

By another section (123), recognizing the constitutional inhibition of any salary exceeding $3500 per annum, it was stipulated that all salaries named in the new charter exceeding that sum should, until

the restrictions imposed by the Constitution be removed, be reduced to that sum. After removal of the restriction the salaries named for City officials in excess of $3500 should be paid.

It was entirely competent for the Legislature to thus enact, and had the Constitution of 1898, superseding that of 1879, contented itself with simply omitting to incorporate among its ordinances or provisions the prohibition as to any municipal salary exceeding $3500 per annum, the larger salary, or $6000 per annum, for the City Attorney, provided by the new charter, would have gone into effect at once upon the adoption of the Constitution of 1898.

But the schedule of the Constitution, Art. 325, in its fifth clause, declares that:—

"All officers, executive, legislative and judicial, State, parish, or municipal, who may be in office at the adoption of this Constitution * * * shall hold· their respective offices until their terms shall have expired, and until their successors are duly qualified, as provided by this Constitution, unless sooner removed, as may be provided by law; and shall receive the compensation now fixed by the Constitution and laws in force at the adoption of this Constitution, except as herein otherwise provided."

This is a plain, precise declaration that the City Attorney of New Orleans, appointed to office in 1896 for a period of six years, unless sooner removed, shall hold his office until his term expires and shall receive the compensation *fixed by the Constitution* and laws in force at the adoption of the new Constitution.

It meant that the City Attorney was not to be disturbed in his office by the adoption of the new organic law, that he was to hold it through to the end of his term, and was to receive during that period the compensation permitted by the Constitution and fixed by the laws in force when the new Constitution superseded the old one.

Observe, he was not to receive the compensation fixed *by the laws in force* at the adoption of the new Constitution, but that fixed by the *Constitution* and laws in force at the time, etc.

Now, the salary "fixed" (in the sense of permitted) for his office by the Constitution of· 1879 was an amount not exceeding $3500 per year, and there was no law, and could be no law, in force at the moment of the adoption of the Constitution of 1898 establishing it at a greater sum.

We have, therefore, the declaration of the organic law overruling Section 123 of Act No. 45 of 1896 (new charter).

That section declared the City Attorney should receive $6000 per year whenever the constitutional inhibition of a greater municipal salary for any official than $3500 should be removed. The new Constitution removed the restriction by omitting its inclusion among its ordinances, but at the same time distinctly averred its intention and uttered its command that neither the City Attorney, nor other municipal officer, nor State, nor parish officer, shall receive, during the term of office for which he was elected or appointed, a compensation other than that he was entitled to receive under the provisions of the old Constitution, be it less or more, except as therein otherwise provided.

The City Attorney does not come within the exception. It was not "therein otherwise provided" that his compensation should be any greater or any less than it had been and was under the Constitution of 1879 and the laws in force when the latter Constitution was superseded by that of 1898. The statute "in force" at that date, fixing the salary of his office, was, clearly, that part of Section 123 of the Act of 1896 which reads: "the several officers under this charter whose salaries exceed said constitutional limit *shall receive each the salary of thirty-five hundred dollars per annum."*

Down to the very moment of the adoption of the Constitution of 1898 (May 12, 1898) it was impossible for any other law fixing the salary at a greater sum to be in force, for it would have been flagrantly in violation of the Constitution of 1879, which did not cease to be the organic law until *the instant* the new Constitution took effect and superseded it. No space of time intervened between the Constitution of 1879 and that of 1898.

There was no *"inter regnum"*. The life of the one did not become extinct until the moment of the delivery—the birth of the other. There was, therefore, no instant of time when that portion of the Act of 1896 authorizing a $6000 per annum salary for the City Attorney could have come "in force" prior to the adoption of the Constitution of 1898.

It follows that the law "in force" as to his salary when that Constitution came *in esse* was the one, which, obeying the mandate of the Constitution of 1879, established its amount at $3500.

Neither, then, by the Constitution nor the laws in force at the

State ex rel. Gilmore vs. Brittin, Chairman, Etc.

adoption of the new Constitution was a greater salary than $3500 allowed to the City Attorney, and the later Constitution, in express terms, decreed the continuance of this salary throughout the term to which the present incumbent was appointed.

The Act 86 of 1898, which amends and re-enacts Section 36 of Act 45 of 1896, and again declares the City Attorney shall receive a salary of $6000, must be held as providing for the future—for the time subsequent to the expiration of the term of office now being filled by the present City Attorney. Otherwise—if held to relate to the present time, to the term of that office existing when the Constitution of 1898 went into effect—it would be clearly violative of that provision of the Constitution which announces that such municipal officers as the City Attorney shall receive during the remainder of their terms of office the salaries they were receiving under the old Constitution and the laws passed in pursuance thereof.

If the Legislature could, thus, increase the salary during the present term of the City Attorney, so could it reduce the salary. Suppose then, it had sought to reduce it under $3500 per annum, would not the provision of the Constitution of 1898 prevent such a reduction? Surely.

The Constitution does not say the officials in office at the time of its adoption should receive the compensation fixed by the laws in force at the time of adoption, or *that fixed by laws enacted subsequent to adoption* and before their term expired. If the framers of the Constitution had intended this they would have used language to convey that meaning, and then the Act 86 of 1898 would apply. But no, they confined themselves to saying that during the remainder of the term of such office they should receive the compensation fixed by the constitution and laws in force *at the time* of the adoption of the new Constitution. One claiming an official salary greater than that which he has been receiving must point to the provision of law which, with certainty and beyond doubt, authorizes it. Otherwise the courts cannot sustain his demand.

It is the court's duty to enforce the laws of the State, fundamental and statutory, as we find them written, and while we are free to concede that the office of City Attorney of New Orleans, in rank and dignity, in duty and responsibility, is one of exalted trust, the arduous and difficult duties of which are discharged by the present incumbent with conspicuous ability and efficiency, we cannot permit considera-

tions of this kind, however persuasive, to have determinative weight in the settlement of the question presented.

The judgment appealed from is reversed and it is now ordered and decreed that relator's demand be rejected at his costs in both courts.

### On Application for Rehearing.

In the brief of counsel it is stated that by the terms of Act 55 of 1898 there is appropriated out of the general fund for salary of the Governor at the rate of $5000 per annum, and for salary of the Lieutenant Governor at the rate of $1500 per annum, whereas by the Constitution of 1879 the Governor's salary is fixed at $4000 per annum and the compensation of the Lieutenant Governor at double that of a member of the General Assembly.

Then it is argued:

"Thus it appears, that notwithstanding the terms of paragraph five, Art. 325, Constitution of 1898, which says: 'that all officers, executive, legislative and judicial, State, parish or municipal, who may be in office at the time of the adoption of this Constitution shall receive the compensation now fixed by the .Constitution and laws in force at the adoption of this Constitution,' the Governor and Lieutenant Governor in office at the time of the adoption of the Constitution, have had their respective salaries of office increased to the extent just set forth.

"Now, the increase in salary here referred to, of the Governor and Lieutenant Governor of the State, is undoubtedly supported in the present connection by the same argument on which relator's case depends, and the action of the Legislature in relation to these high officers of the State, goes far to establish that it is error to hold that the Constitution of 1898 disabled the Legislature from increasing salaries."

There would be force in this if counsel had not, in quoting paragraph 5 of Art. 325 of the Constitution of 1898, omitted, not deeming it relevant, what we consider a most material part of the paragraph— one we not only deem relevant, but which we think changes the situation entirely and to the utter destruction of this contention.

He quotes from the Constitution that all officers, executive, legislative and judicial, "shall receive the compensation now fixed by the Constitution and laws in force at the adoption of this Constitution" and then stops short, whereas in the Constitution itself there is ap-

pended to this quotation, after a comma, these words:—"*except as herein otherwise provided.*" (Italics ours.)

Now, when we come to examine other articles of the Constitution, it appears it is *therein* "otherwise provided" that the Governor shall have a salary of $5000 per annum from and after the adoption of the Constitution, instead of $4000, as per the old Constitution, and the Lieutenant Governor $1500 per annum, as against the smaller compensation allowed him by the former Constitution.

So it was that, when the General Assembly came to make appropriations for the salary of the Governor and Lieutenant Governor following the adoption of the new Constitution, it obeyed the organic law and provided for those salaries as fixed in the Constitution.

But no where in the Constitution of 1898 is it "otherwise provided" that the City Attorney of New Orleans shall have and enjoy a salary greater than that fixed by the laws in force when the new Constitution superseded the old.

Accordingly, it very plainly appears that the cases of the Governor and the Lieutenant Governor stand on a basis entirely different from that of relator herein.

No sufficient reason for granting the rehearing sought appearing, the application therefor is denied.